**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

IRIS NEREIDA SANCHEZ VELAZQUEZ,

    Plaintiff,

    v.

AUTONOMOUS MUNICIPALITY OF
CAROLINA, ET AL.

    Defendants.

**Civil No. 11-1586 (SEC)**

## OPINION AND ORDER

Before the Court are co-defendants Municipality of Carolina, Mayor José C. Aponte-Dalmau and Rubén Moyeno-Cintrón's (collectively, "Co-defendants") motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6) (Docket #62), plaintiff's opposition thereto (Docket # 95), defendants' reply (Docket # 112), and plaintiff's surreply (Docket # 119). After reviewing the filings and the applicable law, Co-defendants' motion to dismiss is **DENIED**.

### Factual and Procedural Background

On March 3, 2012, Iris N. Sánchez-Velázquez ("Plaintiff") filed a Third Amended Complaint against the Municipality of Carolina, Mayor José C. Aponte-Dalmau of the Municipality of Carolina ("Mayor")  and several municipal police officers in their official and personal capacities, alleging employment discrimination on account of her gender, and retaliation under Title VII of the Civil Rights Act and the Fourteenth Amendment of the Constitution of the United States, and for violation of her First Amendment constitutional

rights, among other federal and state law claims.[1] Docket # 46.  The relevant facts, as averred in the Third Amended Complaint, follow.

Plaintiff was a sergeant with the Carolina Municipal Police Department ("Municipal Police").  Docket # 46, ¶¶ 1 and 29.  In 2007, Plaintiff was promoted to "Operations Director" of North Zone II, a position that had the duties and authority of a lieutenant. Id. ¶ 35.  Later on, Freddie Márquez-Vergara ("Márquez") was appointed Commissioner of the Municipal Police. Id. ¶ 37.  In August 2009, Márquez arbitrarily restructured the police zones and eliminated Plaintiff's North Zone II, the only zone assigned to a woman. Id. ¶ 38-39.  De facto and operationally, however, North Zone II continued to exist, and Miguel Encarnación ("Encarnación"), a male sergeant, was later appointed by Márquez to that position. Id. ¶¶ 39, 40, and 41. The other three zones were directed by male police officers. Id. ¶ 35.

Plaintiff was placed under Encarnación's immediate supervision and was allegedly discriminated by him and Javier Millán ("Millán"), a lieutenant and supervisor of Plaintiff and Encarnación.  Plaintiff avers that she was constantly humiliated, mocked, and harassed because of her gender and, additionally, that unfounded insubordination charges were regularly brought against her. Id. ¶ 41 and Docket # 46-3. She was also subjected to unequal treatment in

---

[1]In an Opinion and Order dated November 9, 2012, this court granted Plaintiff's motion for voluntary dismissal without prejudice of all causes of action against the defendants in their personal capacities. See Docket # 156.

The Court should also point out that, at this time, several defendants have not been served with summons, and therefore are not yet parties to this case.  For the limited purposes of addressing the motion to dismiss filed by Co-defendants, and consistent with our duty of evaluating the complaint at this stage in the light most favorable to the plaintiff, the Court will take into account all allegations contained in the Third Amended Complaint.

comparison to male co-workers of lesser rank.  Specifically, she was required to ask for permission to move from one zone to another and was assigned to perform secretarial work. Id. ¶ 42 and 43; Docket # 46-3.

On September 23, 2009, Plaintiff was appointed "Acting Commissioner" ("Oficial del Día") which, according to the Municipal Police regulations, provides an officer with the same authority as a police commissioner. Id. ¶ 44.  During her shift as "Acting Commissioner", Encarnación refused to obey an order Plaintiff gave him regarding a domestic violence incident. Id. ¶¶ 44-48.  Plaintiff alleges that since other officers heard his refusal to follow her order, her authority as "Acting Commissioner" was unlawfully questioned.  Id. As a result of these actions, Plaintiff sent a memorandum to Márquez, requesting an investigation against Encarnación for insubordination.  Id. ¶¶ 50-52.  No actions were taken against Encarnación. Id.

On the other hand, Encarnación filed a complaint against Plaintiff with regard to the handling of the domestic violence incident.  Id. ¶ 53. Márquez brought the complaint to the attention of the Mayor and recommended that he request an investigation of the situation through the Internal Affairs Office. Id. ¶ 54. According to Plaintiff, despite revealing exculpatory evidence, the Internal Affairs Office recommended disciplinary actions against her. Id. ¶ 57. The Mayor ordered fifteen (15) days of suspension from work and pay.  Id. ¶¶ 57 and 85.  Moreover, Márquez did not appoint her again as "Acting Commissioner" and instead filed another complaint against her for alleged workplace harassment with the Internal Affairs Office

which was dismissed for lack of evidence.  Id. ¶ 58-59.

In October 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was discriminated against because of her gender.  Id. ¶ 60. The "Letter of Determination" issued by the EEOC on December 20, 2010 concluded that "the evidence obtained does establish a violation under Title VII of the Civil Rights Act of 1964 against Charging Party [Plaintiff] and other females.  Specifically, Charging Party [Plaintiff] was subject to discrimination and Respondent [Municipality of Carolina - Municipal Police] actively participated in the discriminatory pattern." Docket ¶ 46-3.  Additional frivolous complaints were filed against Plaintiff in retaliation for filing the EEOC charge.  Id. ¶ 63.

On March 23, 2010, the Municipal Police announced five openings for the position of lieutenant to promote qualified sergeants. Id. ¶ 64.  Plaintiff applied for the position, but on December 16, 2010, a group of male sergeants, which she believes were less qualified, got the promotion instead.  Id. ¶ 65.[2]

Plaintiff wrote a memorandum, dated June 2010, to Lorenzo Delgado ("Delgado"), Director of Operations of the South Zone, regarding the misuse by Encarnación of an electronic tracking device installed in squad cars.[3] Id. ¶ 67.  As a result, Delgado filed a complaint against

_____

[2]During the process of applying for the promotion, Plaintiff's personnel evaluations "disappeared".  In addition, the five  candidates selected for the promotion were allegedly less qualified. Docket # 46, ¶ 66.

[3]According to the complaint, Plaintiff wrote the memorandum on June 11, 2010.  See Docket # 45, ¶¶ 67 and 69.  In paragraph 69, however, Plaintiff alleges that said memorandum was written on June 11, 2011.  In light of the other allegations contained in the complaint with regard to this incident, the Court understands that said single reference to the year 2011 was a mere typographical error.

her for failure to follow the chain of command.  Id. ¶¶ 69-70.  She then received a written reprimand, a copy of which was included in her personnel file.  Id. ¶ 71.

That same month, Márquez filed another complaint against Plaintiff for posting comments on her Facebook page criticizing Márquez and the Municipality of Carolina. Id. ¶ 72.  Then, in April 2011, Rubén Moyeno-Cintrón ("Moyeno") filed a complaint against her for publishing pictures of a municipal police officer sleeping during work hours on her Facebook page.  Id. ¶ 75.  Finally, a municipal agent, Marcos Molina ("Molina"), upon instructions of Johnny Cruz ("Cruz"), filed another complaint against Plaintiff for alleged sexual harassment. Id. ¶ 76.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008).  In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well pleaded facts [and indulge] all reasonable inferences" in plaintiff's favor. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).  The Court "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-6.

Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." La Chapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)); see also Buck v. American Airlines, Inc., 476 F.3d 29, 33 (1st Cir. 2007). Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1 Cir. 1988)).

Moreover, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007) (citing Twombly, 550 U.S. at 559). Although complaints do not need detailed factual allegations, the plausibility standard is not akin to a "probability requirement", but it ask more than a sheer possibility that a defendant has acted unlawfully. Twombly, 550 U.S. at 556.

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court reaffirmed Twombly and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 677. Specifically, the court is not compelled to accept legal conclusions set forth as factual allegations in the complaint. Id. Further, "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. (citing Twombly, 550 U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631

F.3d 592, 595 (1st Cir. 2011)("[S]ome allegations, while not stating ultimate legal conclusions,

are nevertheless so threadbare or speculative that they fail to cross the line between the

conclusory to the factual.").  In other words, "[a] plaintiff is not entitled to 'proceed perforce'

by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-

Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Iqbal, 556 U.S.

at 670. Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be

sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the

pleaded facts allow the court to reasonably infer that the defendant is liable for the specific

misconduct alleged. Id. at 677, 682. Such inferences must amount to more than a sheer

possibility and be as plausible as any obvious alternative explanation. Id. at 677.  Plausibility

is a context-specific determination that requires the court to draw on its judicial experience and

common sense. Id. at 678.

The aforementioned requirements complement a bedrock principle of the federal judicial

system: a complaint must contain enough detail to give "a defendant fair notice of the claim and

the grounds upon which it rests." Ocasio-Hernández, 640 F.3d at 8 (citing Fed. R. Civ. P.

8(a)(2)). Accordingly, "[w]hile a plaintiff's claim to relief must be supported by sufficient

factual allegations to be plausible under Twombly [and Iqbal], nothing requires a plaintiff to

prove her case in the pleadings." Chao v. Ballista, 630 F. Supp. 2d 170, 177 (D. Mass. 2009).

Put differently, even after Twombly and Iqbal, "[d]ismissal of a complaint under Rule 12(b)(6)

is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of a short and plain

statement of the claim showing that the pleader is entitled to relief." Ocasio-Hernández, 640

F.3d at 11.

**Applicable Law and Analysis**

*I. Title VII*

*A. Exhaustion of Administrative Remedies and the Right-to-sue Letter*

Co-defendants allege that Plaintiff circumvented Title VII's administrative exhaustion

requirement by filing this action before obtaining a right-to-sue letter.  Docket # 62, p. 4.

According to the Third Amended Complaint and the documents attached to it, the notice of

right-to-sue is dated February 29, 2012 (Docket # 46 and 46-1), that is, approximately eight

months after Plaintiff filed the original complaint on June 21, 2011. Docket # 62, p. 5.[4] Plaintiff

contends that this omission " was cured during the initial stages of this case" because the Third

Amended Complaint was filed after she received the right-to-sue letter, on March 3, 2012.

Docket # 95, p. 7.  The Court agrees with Plaintiff.

Title VII provides a "vehicle through which an individual may seek recovery for

employment discrimination on the grounds of race, color, religion, gender or national origin."

Franceschi v. United States of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008).  It is well

---

[4]Ordinarily, in considering a motion to dismiss, the Court may consider documents attached to the complaint or expressly incorporated to it.  See Watterson v. Page, 987 F.2d 1 (1st Cir. 1993).

settled that a claimant who seeks to recover under Title VII for employment discrimination must file an administrative claim with the EEOC or with a parallel state agency before a civil action may be brought in federal court. Thornton v. United Parcel Service, Inc., 587 F.3d 27, 31 (1st Cir. 2009); see 42 U.S.C. § 2000e-5(e)(1). The First Circuit has held that, with limited exceptions, a plaintiff's unexcused failure to exhaust administrative remedies bars the courthouse door. Franceschi, 514 F.3d at 85. The exhaustion of administrative remedies "has two key components: the timely filing of a charge with the EEOC and the receipt of a right-to-sue letter from the agency." Sánchez v. Dep't of Educ. of P.R., 842 F.Supp. 2d 416 (1st Cir. 2012).

In the present case, Plaintiff filed the complaint with the EEOC in October 2009 and the right-to-sue letter was received on February 29, 2012. Dockets # 46, ¶ 82 and 46-1. Plaintiff filed the Third Amended Complaint on March 3, 2012. Id. According to FED. R. CIV. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave". Plaintiff obtained leave of Court to amend her complaint on February 13, 2012. See Dockets # 27 and 29. That is, several days after receiving the right-to-sue letter, but within the ninety days period provided in Section 706 of Title VII. 42 U.S.C. § 2000e-5(f)(1).

As to the effect of the filing of an amended complaint, Wright & Miller explains as follows:

> Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading. This effect of an amended pleading under Rule 15(a) becomes particularly important when the

amendment purports to cure a defective earlier pleading. For example, plaintiff may file a new complaint that does not refer to or adopt any of the deficient allegations in the original pleading; *if the first complaint is considered superseded by the amendment, the court is not required to dismiss the suit when a motion points up the weaknesses of the earlier pleading.* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010) (emphasis added).

Therefore, the filing of the Third Amended Complaint after having received the right-to-sue letter from the U.S. Department of Justice,[5]  cured any defect that the first and second amended complaint may have had.[6] Accordingly, Co-defendants' request is **DENIED**.

*B. Exhaustion of Administrative Remedies and the Denial of the Promotion*

Co-defendants also allege that Plaintiff failed to exhaust administrative remedies on the Title VII claim based on the alleged denial of the promotion.  Docket # 62, p. 6.  They contend that, according to National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002), the denial of the promotion is a discrete discriminatory act "based on a set of facts that are unconnected, both temporally and substantively, to the Charge of Discrimination filed by plaintiff in October of 2009 in the EEOC." Docket # 62, p. 6-7.

---

[5]According to 29 C.F.R. § 1601.28(d):
In all cases where the respondent is a government, governmental agency, or a political subdivision, the Commission will issue the notice of right to sue when there has been a dismissal of a charge ...  In all other cases where the respondent is a government, governmental agency, or political subdivision, the Attorney General will issue the notice of right to sue.

[6]It is worth noting that, under the case law of other circuits, "dismissal may be avoided if, after the complaint has been filed but before the motion to dismiss has been decided, an EEOC suit letter has been issued". Charles A. Sullivan & Lauren M. Walter, Employment Discrimination Law and Practice, vol. 2 at p. 708, § 12.09[B].

The filing of an administrative claim serves several purposes. "Most importantly, it gives notice to both the employer and the agency of an alleged violation and affords an opportunity to swiftly and informally take any corrective action necessary to reconcile the violation." Thornton v. United Parcel Service, Inc., 587 F.3d 27, 31 (1st Cir. 2009). The civil complaint "is accordingly limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Id. (quoting Powers v. Grinnell Corp., 915 F.2d 34, 37 (1st Cir. 1990)). The scope of the civil action "'is not determined by the specific language of the charge filed with the agency, but rather, may encompass acts of discrimination which the [agency] ... investigation could reasonably be expected to uncover.'" Id. at 32 (quoting Davis v. Lucent Technologies, Inc., 251 F.3d 227, 233 (1st Cir. 2001)).

In the case at hand, Co-defendants' arguments on this issue are not without merit. The parties, however, have not filed a copy of the administrative charge, and, except for the Letter of Determination, the Court has no concrete facts regarding the content of the charge or the matters encompassed in the agency's investigation. Thus, in light of the scope of the investigation rule, a conclusive determination from this court is not possible at this juncture. The "scope of the investigation rule permits a district court to look beyond the four corners of the underlying administrative charge to consider collateral and alternative bases or acts that would have been uncovered in a reasonable investigation." Id. In order to make a sound determination, the Court hereby defers this determination for the summary judgment stage.

Based on the foregoing, Co-defendants' request for dismissal for failure to exhaust administrative remedies is **DENIED**.

*C. Causal Connection between the EEOC Charge and the Denial of the Promotion*

Co-defendants next aver that the denial of a promotion fourteen months after Plaintiff's filing of the EEOC charge, without more, fails to establish the causal connection required for a prima facie case of retaliation. Docket # 62, p. 8-9. Plaintiff, on the other hand, alleges that she "is not invoking this 'very close' 'temporal proximity' doctrine in her complaint ... [b]ut to make it clear, Plaintiff does present in her complaint a series of events that constitutes a pattern within temporal proximity to the filing of the Charge with the EEOC." Docket # 95, p. 11-12 (emphasis omitted). At this stage of the proceedings, the Court agrees with Plaintiff.

Title VII's anti-retaliation provision prohibits any employer from discriminating against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Therefore, the elements of a retaliation claim are: (1) that she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85 (1st Cir. 2006). Given that Co-defendants have not challenged the sufficiency of Plaintiff's allegations in connection with the first two prongs, the Court limits its analysis to the third prong.

To satisfy the third prong, Plaintiff must sufficiently allege a causal connection between the protected conduct and the adverse employment action.  It has been stated that "'[v]ery close' temporal proximity between protected activity and an adverse employment action can satisfy a plaintiff's burden of showing causal connection.'" Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 15 (1st Cir. 2012). Therefore, "temporal proximity alone can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation.'" DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008).[7] Courts should also consider "the actions taken against the employee within the overall context and sequence of events[,] the historical background of the decision, any departures from normal procedure, and contemporary statements by the employer's decision makers." Garayalde-Rijos v. Autonomous Municipality of Carolina, No. 11-1947, 2012 WL 4446380, at *4 (D.P.R. Aug. 30, 2012). Moreover, although other circuits have rejected attempts to unduly stretch the "close temporal proximity" requirement, they have recognized that it must not be read too restrictively where there is a pattern of retaliatory conduct that begins soon after the filing of the agency complaint. See Marx v. Schnuck Markets, Inc., 76 F.3d 324 (10th Cir. 1996); see also Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370 (6th Cir. 1984).

---

[7]Either "direct" or "circumstantial" evidence of retaliation would meet plaintiff's ultimate burden. Circumstantial evidence can be considered even in the absence of temporal proximity.  See DeCaire, 530 F.3d at 20.

In the case at bar, Plaintiff filed the complaint with the EEOC in October 2009, and the Municipality of Carolina acquired knowledge of the complaint shortly thereafter.[8]  The denial of the promotion occurred on December 16, 2010.  Therefore, since the adverse action occurred approximately fourteen months after the filing of the charge with the EEOC, temporal proximity, standing alone, does not give rise to an inference of causation.  See Sánchez-Rodríguez, 673 F.3d at 15; Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (a one month interval between the protected conduct and the employment action is sufficient temporal proximity); King v. Town of Hanover, 116 F.3d 965, 968 (1 Cir. 1997) (five months interval between complaint and disciplinary action found to be too long where plaintiff failed to point to any other evidence demonstrating that said action was retaliatory).

Plaintiff, however, also alleges that most of her personnel evaluations disappeared during the process; that Plaintiff was better qualified than the other male candidates that were finally selected; and that, between the announcement of the five openings and the denial of the promotion, she was the subject of two allegedly frivolous complaints.  Docket # 46, ¶¶ 66, 69, 72.  These allegations, taken into consideration with the overall context and sequence of events, are sufficient at this stage to establish a plausible claim for relief.  Accordingly, Co-defendants' request for dismissal of the retaliation claim for the alleged denial of the promotion is **DENIED**.

---

[8]According to the complaint, Plaintiff filed the complaint with the EEOC in October 2009 and, "[s]hortly thereafter, and pursuant to EEOC standard operating procedures, defendant Carolina was notified of Plaintiff's complaint." Docket # 46, ¶ 60.

*II. Constitutional Claims*

As related, Plaintiff alleges that defendants violated her First Amendment rights by retaliating against her for denouncing improper conduct by fellow police officers, to wit: (1) she received a written reprimand for writing a memorandum for the alleged misuse by Encarnación of an electronic tracking device installed in squad cars of the Municipal Police (id. ¶ 69-71);   (2) Márquez filed a complaint against Plaintiff for posting comments on her Facebook page criticizing him and the Municipal Police (id. ¶ 72);   (3) Moyeno filed a complaint against her for publishing pictures of a municipal police officer sleeping during work hours on her Facebook page. Id. ¶ 75.

The Supreme Court "has made clear that public employees do not surrender all their First Amendment rights by reason of their employment." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006).  Rather, the First Amendment protects "a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Id.  To determine whether an adverse employment action against a public employee violates her First Amendment free speech rights, the First Circuit has articulated the following three-part inquiry.

First, as determined in Connick v Myers, 461 U.S. 138 (1983), the court must determine whether the employee spoke as a citizen on a matter of public concern. Id. If the answer is no, the employee has no First Amendment cause of action based on her employer's reaction to the speech. Decotiis v. Whittemore, 635 F3d 22, 29 (1st Cir. 2011); Curran v.

Cousins, 509 F.3d 36 (1st Cir. 2007). Second, whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. Curran, 509 F.3d at 29. And third, the employee has to "show that the protected expression was a substantial or motivating factor in the adverse employment decision." Decotiis, 635 F.3d at 30.

### A. The Memorandum for Alleged Misuse of an Electronic Tracking Device

In their motion to dismiss, Co-defendants do not contest the sufficiency of the allegations and, instead, they invite this court to determine whether Plaintiff's statements were made as a citizen on a matter of public concern.  Docket # 62, p. 11-14. Defendants contend that it is clear that Plaintiff's  statements were made pursuant to her duties as a sergeant and undertaken in the performance of her job and that, as a result, Plaintiff has no First Amendment cause of action based on her employer's reaction to the speech.  Id.

The Supreme Court has recognized "the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion." Garcetti, 547 U.S. at 419. A determination of whether an employee's speech involves a matter of public concern is a case-specific, fact-dependent inquiry, Curran, 209 F.3d at 46, and shall be made on the basis of "the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. 138, 147-8 (1983).  If the speech "is clearly a legitimate matter of *inherent* concern to the electorate, the court may eschew further inquiry into the

employee's motives as revealed by the 'form and context' of the expression." Curran, 509 F.3d at 46 (emphasis in original). Matters of "inherent" public concern include official malfeasance, abuse of office or the neglect of duties. Id. "On the other hand, public-employee speech on a topic which would not necessarily qualify, *on the basis of its content alone*, as a matter of inherent public concern, may require a more complete ... analysis into the form and context of the public-employee expression, 'as revealed by the whole record,' with a view to whether the community has *in fact* manifested a legitimate concern in the internal workings of the particular agency or department of government, and, if so, whether the 'form' of the employee's expression suggests a subjective intent to contribute to any such public discourse." O'Connor v. Steeves, 994 F.2d 905, 914 (1st Cir. 1993) (citations omitted).

The second step and  more complicated determination is whether she was speaking as a citizen.  The Supreme Court held in Garcetti that "when public employees make statements *pursuant to their official duties*, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421 (emphasis added).  The Court, however, clarified  the following:

> As indicated above, the parties in this case do not dispute that Ceballos wrote his disposition memo pursuant to his employment duties.  We thus have no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate. We reject, however, the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions.  The proper inquiry is a practical one. Formal job

descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes. Id. at 424-5 (citations omitted).

After Garcetti, the First Circuit has elaborated on the definition of "an employee's official duties" by emphasizing in the importance of a two-step, context specific inquiry needed to make said determination. Decotiis, 635 F.3d at 31. Under the two-step inquiry, "[f]irst, a court must ask, 'what are the employee's official responsibilities?,' and second, 'was the speech at issue made pursuant to those responsibilities?'" Id.

From a simple evaluation of the applicable standard delineated above, it is pellucid that a determination on this regard is not suitable for this stage. Therefore, this court declines Co-defendant's invitation. As explained in Garcetti, the fact that the expressions were made inside of plaintiff's office, rather than publicly, and that they concerned the subject matter of the plaintiff's employment alone, even if undisputed, are nondispositive. Among the documents submitted by the parties, there is nothing with regard to Plaintiff's formal and practical duties as a sergeant. Plaintiff alleges that she had no duty or legal obligation to write said memorandum, while Co-defendants allege that it was within her duties. Moreover, the documents submitted by the parties do not contain a copy of the memorandum or of the statements contained in it, nor information about the complaint filed by Delgado against her,

and the reasons for said complaint.  The Third Amended Complaint only alleges that Delgado

filed the complaint for Plaintiff's failure to follow the chain of command.

Therefore, at this stage of the proceedings, the Court cannot make a conclusive

determination as to whether Plaintiff's statements were made as a citizen on a matter of public

concern.  Such a determination is better-suited for the summary judgment stage. As stated by

the First Circuit in Decotiis, "[n]avigating the shoals of the standard articulated by the Supreme

Court in Garcetti v. Ceballos, has proven to be tricky business, and particularly so in the context

of a motion to dismiss, because the inquiry is so highly fact intensive and context specific."

Garcetti, 635 F.3d at 26 (citations omitted).  Accordingly, Co-defendants request for dismissal

is **DENIED**.

*B. Posting Comments on her Facebook Page*

Co-defendants contend that assuming *arguendo* that Plaintiff was speaking as a citizen

on a matter of public concern, the Municipality of Carolina had more than an adequate

justification for treating her differently from other members of the general public as a result of

the comments and pictures that she posted on her Facebook page, and because of the

memorandum she presented to denounce the misuse of the electronic tracking device.  Docket

# 62, p. 15-16.  Plaintiff counters that she posted comments on Facebook criticizing "Marquez

and the administration of Carolina Municipal Police for making decisions that jeopardized the

smooth and efficient operations of the Municipal Police and its resources [and] about these

administrative decisions putting in harms way the life of fellow officers." Docket # 46, p. 16,

¶ 72.  She alleges that her comments constitute matters of public concern, and that were made during her free time. Id. For these comments, another complaint was filed against Plaintiff. Id.

"Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." Garcetti, 547 U.S. at 418.  Moreover, "public employees often occupy trusted positions in society [and w]hen they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions." Id. at 419.  "However, because a citizen who works for the government is nonetheless a citizen, 'so long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively.'" Curran, 509 F.3d at 47 (citing Garcetti, 547 U.S. at 419)).  An employer need not show an actual adverse effect, but speech that has some potential to affect a public employer's operations. Id. (citations omitted). Therefore, the court must "balance... the interest of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Curran, 509 F.3d at 45 (quoting Pickering v. Bd. of Educ., 391 U.S. 563 (1968)) (emphasis omitted).

Contrary to other cases in which courts have considered this argument in the motion to dismiss or motion for judgment on the pleadings stage, see, e.g., Curran, 509 F.3d at 36, in the case at hand, neither the content of the memorandum nor the expressions posted on Facebook

were alleged by the parties. Moreover, information about the content of and reasons for the complaint filed against Plaintiff were not alleged or exposed by the parties.  In short, the allegations are not sufficient for this court to make a conclusive ruling on the issue.  In order for this court to determine if the speech had some potential to affect the employer's operations, as required by Garcetti, the speech itself must be evaluated.  Accordingly, Co-defendants contention on this issue is **DENIED**.[9]

*III. Section 1983*

*A. Conspiracy Claim*

In this circuit, a conspiracy claim may be actionable under Section 1983.  Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980). A civil rights conspiracy or conspiracy claim under Section 1983 is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages."  Estate of Bennett v. Wainwright, 548 F.3d 155 (1st Cir. 2008) (quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988)). Two requisites must be satisfied: "plaintiff must allege and prove both a conspiracy and an actual deprivation of rights; mere proof of a conspiracy is insufficient to establish a section 1983 claim." Landrigan, 628 F.2d at 742 (quoting Hampton v. Hanrahan, 600 F.2d 600, 622 (7th Cir. 1979), *rev'd in part on*

---

[9]The Court also defers its determination with regard to the picture published by Plaintiff on her Facebook page.

**CIVIL NO. 11-1586 (SEC)**                                                   **Page 22**

other grounds, 446 U.S. 754 (1980)). "The gist of the (section 1983) cause of action is the deprivation and not the conspiracy. Conspiracy is merely the mechanism by which to obtain the necessary state action, or to impose liability on one defendant for the acts of the others performed in pursuance of the conspiracy." Id. at 742 (internal quotations and citations omitted). Nevertheless, a conspiracy claim must be alleged through specific facts, setting forth both "the existence and scope of the alleged conspiracy." Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977).

        Co-defendants' challenge to Plaintiff's conspiracy claim relies on the specificity requirements described above. They contend that "[f]ar from detailed allegations of a conspiracy, however, plaintiff makes hopelessly vague and conclusory allegations that defendants engaged in a civil conspiracy." Docket # 62, p. 19.  The Court disagrees with Co-defendants' contention.  Although Plaintiff's complaint does not allude to an overt conspiratory agreement between defendants, it contains specific factual allegations regarding defendants' alleged concerted effort to discriminate and violate her constitutional rights, among others,  by filing frivolous charges against Plaintiff upon instruction and/or with the endorsement of the defendants.  Some of these allegations include the request for an investigation and subsequent filing of an unfounded complaint for insubordination against the Plaintiff, "with the endorsement and follow through" of co-defendants Millán, Márquez and the Mayor. Docket # 46, ¶ 55-56.  Plaintiff also alleges that the other complaints filed against her as a result of her statements against Encarnación for alleged misuse of an electronic tracking device and her

comments on Facebook, were made with the endorsement and knowledge of other co-defendants.  Id. ¶ 63-75. Plaintiff further avers that "upon instructions of co-defendant Johnny Cruz, municipal agent Marcos Molina filed a frivolous complaint against the Plaintiff for alleged sexual harassment." Id. ¶ 76. These allegations, taken as true, and in light of allegations of disparate treatment by claiming that other male officers received less stringent sanctions for conduct much more egregious (see id. ¶¶ 100-101), are sufficient to state a plausible claim for relief.  Co-defendants, however, may reassert their challenge at the summary judgment stage. For now, their request for dismissal of the conspiracy claim is **DENIED**.

*B. Municipal Liability*

A suit against a municipal official in his or her official capacity is not a suit against the official but rather is a suit against the entity itself.  Negrón-Almeda v. Santiago, 579 F.3d 45 (1st Cir. 2009).  To establish a claim of municipal liability under Section 1983, a plaintiff must show that the "execution of a government's *policy or custom*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Social Services of the City of N.Y., 436 U.S. 658 (1978) (emphasis added). In other words, that the deprivation of a constitutional right was by means of the execution of said government policy or custom.  Concepción v. Municipality of Gurabo, 560 F.Supp. 2d 139, 141-2 (D.P.R. 2008).

There are several ways to establish the existence of a policy or custom sufficient to impose Section 1983 liability on a municipal government. Erwin Chemerinsky, Federal

Jurisdiction 530 (6th ed. 2012). "[A]ctions by those with final authority for making a decision in the municipality constitute official policy for purposes of Section 1983." Id. at 531. In such cases, municipal liability "attached where the decision-maker possesses final authority to establish municipal policy with respect to the actions ordered." Concepción, 560 F. Supp. 2d at 142. "In determining which individuals have final decision-making authority for a city, courts can consider state and local laws and 'custom or usage having the force of law.'" Chemerinsky, supra, at 532.

Generally, under Puerto Rico law, the actions of a mayor constitute "the official policy of the municipality." Cordero v. De Jesús-Méndez, 867 F.2d 1, 7 (1st Cir. 1989). According to the Autonomous Municipalities Act of the Commonwealth of Puerto Rico of 1991, P.R. Laws Ann. tit. 21, §§ 4001 et seq., "[t]he mayor shall be the highest authority of the executive branch of the municipal government, and as such, is charged with the direction, administration, and supervision of the operations of the municipality." Id. § 4109. In addition, the Municipal Police Act provides that "[t]he highest authority in the direction of the Municipal Police shall be vested in the mayor, but the immediate direction and supervision of the Corps shall be under the charge of a Commissioner." P.R. Laws Ann. tit. 21, § 1064. Even further, in cases of slight faults, the commissioner is empowered to set aside or confirm a recommended disciplinary action, or impose any other sanction that he may deem reasonable. Id.

In this case, Plaintiff alleged that defendants committed acts that constituted discriminatory treatment or acts in violation of her freedom of speech rights. The complaint

contains numerous factual allegations on this regard, such as, the denial of a promotion by Márquez and the Mayor as the municipality's nominating authority, the elimination of her positions as Operation Director by Márquez, and the filing of unfounded administrative charges and imposition of disciplinary sanctions. Docket # 46, ¶¶ 66, 38 and 55. Plaintiff alleges that such actions were taken by or with the endorsement of high municipal officers like the Police Commissioner and the Mayor. Plaintiffs allegations, taken as true, may give rise to claims that can provide entitlement to relief against the Municipality of Carolina. Co-defendants' request of dismissal is **DENIED**.

For all the reasons elucidated above, the Court finds that Co-defendants' motion to dismiss shall be **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of December, 2012.

*s/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge